**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2879-20

SEVAN ASSOCIATES, INC.,

     Plaintiff-Appellant,

v.

SUBWAY REAL ESTATE,
LLC, NAIYA FOOD LLC,
NAIYA ENTERPRISES,
LLC, and KANCHI PATEL,

     Defendants-Respondents.

_____

Submitted June 2, 2022 – Decided June 22, 2022

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3997-19.

Sammarro & Zalarick, PA, attorneys for appellant (Gary J. Zalarick, on the brief).

Joel Silberman, attorney for respondents Naiya Food LLC, Naiya Enterprises, LLC, and Kanchi Patel.

PER CURIAM

Plaintiff Sevan Associates appeals from a May 21, 2021 order granting defendant Kanchi Patel's motion for summary judgment.[1] We affirm.

We discern the following facts from the record. On November 14, 2002, Spring Street Investors, LLC (Spring Street), and Subway Real Estate Corp. (Subway) entered into a five-year commercial lease (original lease) for a building in Elizabeth. On May 17, 2006, Subway entered into a sublease, subletting the original lease to Visuvalingam Rajaratnam in order for Rajaratnam to operate a Subway restaurant. Subway later executed two addendums to the sublease to change the name of the sublessee on December 4, 2007 and September 29, 2010. During the term of the original lease, Spring Street sold the building to plaintiff, who on June 29, 2012, agreed to extend the existing lease.

On October 3, 2012, Subway executed another addendum to the sublease, transferring the Subway restaurant to defendant. On August 11, 2015, after defendant allegedly failed to pay rent, plaintiff and Subway entered into an Agreement of Termination and Mutual Release of Lease (termination

_____

[1] The motion for summary judgment was brought by and granted in favor of defendant as well as co-defendants Naiya Food LLC and Naiya Enterprises LLC. Plaintiff, however, is only appealing the decision as it pertains to defendant.

2

agreement).  Pursuant to the termination agreement, the original lease was terminated in exchange for payment of $40,000.

On April 20, 2017, Subway and plaintiff entered into a new lease for the premises (renegotiated lease).  Section twenty-three of the renegotiated lease stated in pertinent part:

> In the event Tenant's failure to perform any of the terms or conditions of this Lease continues for thirty . . . days after Tenant's receipt of written notice thereof, Landlord shall declare the rights of Tenant under this Lease terminated, and thereafter, recover possession of said Premises through legal process.  Landlord acknowledges an affirmative duty to mitigate Tenant's damages and shall in no event seek to accelerate rent.

> Notwithstanding any provision in this Lease to the contrary, Landlord and Tenant agree that Tenant's aggregate liability in the event of default shall be zero dollars. . . .  Landlord and Tenant agree that this limitation of liability shall apply to, but not be limited to, all back and future rent, triple net charges (if applicable), late fees, attorney fees and court costs. . . .

Section twenty-two of the renegotiated lease stated in pertinent part:

> Since Tenant may sublet the Premises to a licensee/franchisee of Doctor's Associates Inc. and the licensee/franchisee may pay rent directly to Landlord, Tenant does not receive rental income and will not know if rent has not been paid.  Since the parties recognize that time is of the essence in this matter, Landlord agrees to give written notice to Tenant within ten . . . days of any failure to perform any of the terms or conditions of this Lease by Tenant, its sublessee, or

assignee. Failure of Landlord to give such notice will constitute a waiver of monetary and non-monetary claims against Tenant. Any notice which is to be given to Tenant shall be deemed sufficiently given if sent by Certified or Registered Mail . . . .

On March 5, 2017, six weeks before the renegotiated lease was executed, plaintiff and defendant entered into an agreement (stipulation) "[a]s additional consideration for the [l]ease [a]greement for the Subway business." Pursuant to the stipulation, upon signing the yet-to-be executed renegotiated lease, defendant would pay plaintiff a non-refundable fee of $38,000, as well as an additional $16,000 at a rate of $1,000 per month, in addition to any rent due under the lease. The stipulation further indicated that upon the sale, lease, transfer, or assignment of the Subway restaurant an additional sum of $30,000 would be due, and that if any payment is late by ten days, the debt of $100,000 would become due, less any payments previously paid. Finally, section five of the stipulation stated:

> [Defendant] agrees that he will immediately undertake and be solely responsible for all Certificates of Occupancy, building permits and any and all requirements of the City of Elizabeth and/or State of New Jersey to maintain and operate the Subway. [Defendant] further agrees that he will be solely responsible for all requirements and obligations under a lease executed between [plaintiff] and Subway, including but not limited to all work and costs required for compliance under the ADA provisions of the lease

4

and/or any governmental authorities and shall be solely responsible for all the requirements and obligations.

On April 28, 2017 and April 29, 2017, defendant paid plaintiff the non-refundable fee of $38,000 in satisfaction of the stipulation. On May 19, 2017, Subway executed a sublease subletting the premises to defendant and binding him to the same provisions of the renegotiated lease.

On November 15, 2019, plaintiff filed a complaint against Subway, seeking unpaid rent and costs. Plaintiff later amended the complaint to include defendant, Naiya Food LLC, and Naiya Enterprises LLC.[2] On January 12, 2020, defendant, Naiya Food LLC, and Naiya Enterprises LLC filed an answer. On March 6, 2020, Subway filed an answer.

On August 27, 2020, the parties entered a stipulation of dismissal of all claims against Subway. Plaintiff's claims against defendant, Naiya Food LLC, and Naiya Enterprises LLC were still active. On March 29, 2021, the remaining defendants filed a motion for summary judgment. On May 6, 2021, plaintiff opposed the motion, arguing that defendant was personally liable based on section five of the stipulation.

---

[2] Although the amended complaint is not in the record, other aspects of the record indicate that plaintiff amended its original complaint. See, e.g.

On May 21, 2021, after hearing from the parties, the judge granted defendant's motion, finding that sections twenty-two and twenty-three of the renegotiated lease controlled and that there was "no way" for the court to interpret the stipulation as a personal guarantee. The judge noted that section twenty-three of the renegotiated lease "specifically [said] that there is . . . zero dollars due from the tenant" and did not find that section to be an enforceable personal guarantee. The judge further explained that he has "never seen a personal guarantee that doesn't say personal guarantee[,]" and neither section twenty-three of the renegotiated lease nor the stipulation included that language. This appeal followed.

On appeal, plaintiff presents the following argument for our consideration:

> POINT I
>
> THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT TO [DEFENDANT] IN HOLDING THERE WAS NO PERSONAL GUARANTEE TO [PLAINTIFF].

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

6 A-2879-20

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We analyze the agreement at issue in this case under the familiar rules of contract interpretation, using the same standard as the trial court. See Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). Generally, courts give contractual terms their plain and ordinary meaning. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). "A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning." Ibid. "Where the terms of an agreement are clear, we ordinarily will not make a better contract for the parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either, particularly in a commercial, arms-length setting." Carroll v. United Airlines, Inc., 325 N.J. Super. 353, 358-59 (App. Div. 1999). In other words, "[i]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico v. Rothberg, 234 N.J. 168, 178 (2018) (quoting In re Cnty. of Atl., 230 N.J. 237, 254-55 (2017)).

In light of these principles, we reject plaintiff's argument that defendant was personally liable. Neither section twenty-three of the renegotiated lease nor section five of the stipulation included a personal guarantee clause. Plaintiff wants this court to treat the words "personally guarantee" and "solely responsible" synonymously, but points to no legal authority compelling us to do so. Instead, we are required to enforce the contract as written if the contract is clear. See Serico, 234 N.J. at 178. To that end, section twenty-three of the renegotiated lease, which defendant was bound by through the May 2017 sublease, unequivocally stated in pertinent part: "Notwithstanding any provision in this Lease to the contrary, Landlord and Tenant agree that Tenant's aggregate liability in the event of default shall be zero dollars. . . ." The judge did not need to consider the circumstances surrounding the stipulation and renegotiated lease because the contract was clear. See Schor, 357 N.J. Super. at 191. Therefore, the judge read the contract correctly according to its plain terms and properly granted summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2879-20